ANN HOWARD'S APRICOTS RESTAURANT, INC.
*v.* COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES ET AL.
(15231)

Callahan, Borden, Berdon, Norcott and Katz, Js.

Argued March 21—officially released May 28, 1996

*Charles Krich*, assistant commission counsel, with whom was *Philip A. Murphy, Jr.*, commission counsel, for the appellant (named defendant).

*Gregg D. Adler*, with whom was *Anne Goldstein*, for the appellants (defendant John Doe II et al.).

*Frederick L. Dorsey*, with whom was *William A. Ryan*, for the appellee (plaintiff).

*Catherine Hanssens*, *Kathleen A. Sullivan* and *David Lesser*, law student intern, filed a brief for the Connecticut AIDS Action Council et al. as amici curiae.

KATZ, J. The principal issue on appeal is whether the trial court properly determined that a hearing officer for the commission on human rights and opportunities had abused her discretion in failing to strike the direct testimony of a defendant who died before he could be fully cross-examined. We disagree in part with the trial court and, consequently, reverse the judgment in part.

This case began in 1991 when the defendant John Doe II, a waiter employed at the plaintiff restaurant, Ann Howard's Apricots Restaurant, Inc. (plaintiff), filed a complaint with the named defendant, the commission on human rights and opportunities (commission), alleging that the plaintiff had discriminated against him in violation of General Statutes § 46a-60 (a) (1)[1] on the

---

[1] General Statutes § 46a-60 provides in relevant part: "Discriminatory employment practices prohibited. (a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate

basis of the plaintiff's belief that Doe suffered from acquired immune deficiency syndrome (AIDS). The commission investigated the complaint and issued a probable cause finding on January 23, 1992. After attempts at conciliation had failed, the commission certified the complaint for a public hearing pursuant to General Statutes §§ 46a-83 and 46a-84,[2] at which hearing officer Deborah S. Freeman presided.

---

against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or *physical disability*, including, but not limited to, blindness . . . ." (Emphasis added.)

General Statutes § 46a-51 (15) defines "physically disabled" as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device . . . ."

[2] General Statutes § 46a-83 provides in relevant part: "Complaint: Review; dismissal; investigation; conciliation; disclosure; subpoena; default order. . . .

"(f) Upon a determination that there is reasonable cause to believe that a discriminatory practice has been or is being committed as alleged in the complaint, an investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within sixty days of a finding of reasonable cause. The refusal to accept a settlement shall not be grounds for dismissal of any complaint. . . ."

General Statutes § 46a-84 provides in relevant part: "Complaint: Hearing. Settlement or alternative dispute resolution. Order of default, when. (a) If the investigator fails to eliminate a discriminatory practice complained of pursuant to section 46a-82 within forty-five days of a finding of reasonable cause, he shall certify the complaint and the results of the investigation to the executive director of the commission and to the attorney general.

"(b) Upon certification of the complaint, the executive director of the commission or his designee shall appoint a hearing officer or hearing adjudicator to act as a presiding officer to hear the complaint or to conduct settlement negotiations and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the presiding officer or hearing adjudicator at a time and place to be specified in the notice, provided such hearing shall be held not later than ninety days after a finding of reasonable cause. The hearing shall be a de novo hearing on the merits of

Doe testified during three days of hearings,[3] on August 14, November 2 and November 16, 1992. The first two days consisted of Doe's complete direct testimony, while the third day consisted of Doe's partial cross-examination. Thereafter, all parties agreed to postpone the remainder of Doe's cross-examination in order to permit the testimony of nonparty witnesses. Although hearing dates were scheduled in December, 1992, to complete Doe's cross-examination, those dates were canceled because Doe became ill. Doe died on February 3, 1993, before he could be cross-examined any further.

After Doe's death, the complaint was amended to substitute for him Annette Blondeau, executrix of his estate. Additionally, the commission was added as a party. Soon thereafter, the plaintiff filed a motion to strike Doe's direct testimony because it had not been subject to full cross-examination, but the motion was denied. The hearing officer determined that instead of striking the direct testimony, she would take into consideration the fact that a large part of the direct testimony had not been subject to cross-examination and would, accordingly, afford that portion less weight than any contrary evidence that had been presented during the hearing and that had been subject to cross-examination.

During the three days of hearings Doe testified to the following. He had been hired by the plaintiff in May, 1983. Toward the end of 1990, he began to lose weight and hair and, because he was weak, tired and had shaking episodes, he experienced difficulty in serving food and drinks that spilled easily. Doe initially diagnosed himself with hypoglycemia and placed himself on a

---

the complaint and not an appeal of the commission's processing of the complaint prior to its certification. . . ."

[3] There were seven days of public hearings: August 14, November 2, November 3 and November 16, 1992, and April 5, April 6 and April 8, 1993.

special diet to counteract the effects of hypoglycemia. Because his condition worsened, the plaintiff placed Doe on an involuntary leave of absence to commence on December 8, 1990, in order to permit him to recover from his illness. Doe testified that there had been no time limit on this leave and that Kevin Quinn, the plaintiff's general manager, had told him that his job would be available when he was ready to return. During his subsequent medical treatment, Doe was diagnosed with bacterial pneumonia and tested positive for the presence of the human immunodeficiency virus (HIV). While Doe was on the leave of absence, Quinn, other members of the managerial staff, and other employees became suspicious that Doe had AIDS. In March, 1991, when Doe had recovered from pneumonia and was able to return to work, the plaintiff refused to reinstate him. Doe also testified as to the treatment afforded to other employees who had taken leaves of absence to recover from broken bones, pregnancy and a heart attack, and to receive treatment for substance abuse. Doe stated that, unlike those other employees, Quinn required him periodically to check in with management and to present documentation from his physician indicating that he was capable of returning to work.

Additionally, during his direct testimony, Doe offered evidence regarding the damages that he had incurred as a result of the plaintiff's decision to terminate his employment. He discussed the earnings he would have received had he continued to work for the plaintiff in comparison to the earnings he received at other jobs that he took after the plaintiff had discharged him. Moreover, Doe testified as to the reasonable efforts that he had made to find other work, including where he had looked, how often he had looked, and which jobs he had secured. Doe also testified as to his emotional state following his discharge. The plaintiff, however,

did not have the opportunity to cross-examine Doe on the issue of damages.

Much of the same evidence pertaining to the plaintiff's liability was presented at the hearing by witnesses other than Doe. Roger Alsbaugh, another waiter who worked for the plaintiff, testified that Doe's appearance began to change toward the end of 1990 in that Doe had lost weight and hair and appeared pale. Furthermore, at that time, Doe's work performance changed in that he began having difficulty carrying certain items to tables. While Doe was on his leave of absence, Quinn asked Alsbaugh whether he thought that Doe had AIDS. Additionally, Alsbaugh testified as to other discussions that management and other employees had had regarding whether Doe had AIDS. Finally, Alsbaugh referred to other employees who had taken leaves of absence to recover from various medical conditions and stated that they all were permitted to return to work.

Sheila Murray, a waitress who worked for the plaintiff, also testified that she had spoken with Quinn regarding Doe's condition. "I asked him what was wrong, if he knew. And [Quinn] said, 'Well,' I remember this, 'oh come on Sheila,' you know, 'it seems quite apparent that [Doe] is dying from AIDS.'" She also testified regarding other employees who had taken leaves of absence for medical reasons, and who, upon recovery from their illnesses, returned to work for the plaintiff. Jessica West, another waitress, testified that when she took a leave of absence, there was no requirement that she either report in during her leave or produce documentation from her physician indicating that she could return to work.

Lastly, Quinn testified to the circumstances regarding Doe's employment and discharge. He stated that even though none of the other employees who had been on leaves of absence had been asked to produce medical

documentation regarding their ability to return to work, and none of them had been discharged while on leave, the circumstances surrounding the leaves of absence for those other employees were different than they were for Doe. Quinn explained two differences. "One, the knowledge of what was wrong with the individual and, two, communication with the individuals regarding their treatment and their prognosis for return to work. . . . In [Doe's] situation, it was very unclear to me as to what was wrong with [him]. I did not know. And the second part of that was that there was no communication between [Doe] and I following a conversation in December until, I believe, late February or early March." Quinn testified that even though Doe had told him at a meeting on December 28, 1990, that Doe had been diagnosed with bacterial pneumonia, he did not find Doe's statements regarding his health to be credible because, in the past, Doe had incorrectly diagnosed himself with hypoglycemia and had lied about seeing a physician. Consequently, Quinn wanted some proof from Doe's physician that he in fact had bacterial pneumonia, that he was being treated for it, and that he could return to work.

Doe had also informed Quinn during their December 28 discussion that he had had blood tests performed as part of his medical treatment, the results of which would be available at the beginning of January. Quinn testified that he had expected Doe to contact him with the test results and with information from Doe's physician indicating when Doe would be able to return to work. When Doe failed to contact Quinn at the beginning of January, Quinn assumed, without knowing whether Doe's condition had improved, that Doe was forfeiting his job with the plaintiff. Quinn further testified that when Doe finally contacted him in March, when Doe's physician released him to return to work, Quinn refused to discuss Doe's health and his ability

to return to work, believing that Doe had long since been discharged.

Moreover, Quinn testified that there were other occasions when Doe had been dishonest, including the times when Doe allegedly had made drinks for himself from the plaintiff's bar after the bar had closed, when Doe had failed to share his tips, and when Doe had avoided performing certain tasks. Quinn stated, however, that at the time that he had placed Doe on the leave of absence, he was prepared to reinstate Doe despite those past instances of dishonesty once he was provided with medical documentation that Doe was well enough to return to work. Furthermore, Quinn stated that although he believed that Doe was gay and promiscuous, he at no time suspected that Doe might have AIDS, did not discuss with others whether Doe had AIDS, and actually believed Doe, who denied having AIDS.

Following the public hearing, the hearing officer issued findings of fact and a decision in which she determined that Doe had proven that the plaintiff had discriminated against him. Specifically, the hearing officer first determined that Doe had established a prima facie case of discrimination based on a physical disability or the perception of a physical disability by showing that: "(1) he was qualified to perform his work and that he was physically capable of returning to his position of waiter; (2) in December of 1990, the waiter position John Doe held was promised to be held open for him upon his recovery and return to work; (3) [the plaintiff's] staff began in January of 1991 to speculate and to discuss that John Doe had AIDS; [and] (4) by March of 1991, even though John Doe's doctor said he [had] recovered, [the plaintiff] believed that John Doe had AIDS or a similar disability, and therefore, disregarded his recovered medical condition and his ability to return to work."

The hearing officer next considered whether the plaintiff had produced evidence of a legitimate, nondiscriminatory reason for its decision not to reinstate Doe. The plaintiff's purported legitimate, nondiscriminatory reasons were that Doe was not credible and that the plaintiff was concerned about the risk that Doe's condition would pose to others. "Mr. Quinn testified that both John Doe's actions in the past and self-diagnosis of hypoglycemia were cause for him to find that John Doe was not credible. Mr. Doe lied about seeing a doctor for hypoglycemia . . . he compounded this lie by repeatedly describing the 'results of his doctor's visits' and 'blood counts' to substantiate his continuing weight and hair loss . . . and he eventually lied about having AIDS . . . . Mr. Doe was, by his own admission in these instances, not a credible person." The hearing officer found the plaintiff's concern about Doe's credibility to be a legitimate and nondiscriminatory reason for failing to reinstate Doe. She also found, however, that because the plaintiff had never asked Doe to be examined by an independent physician to determine whether he could return to work and had failed to produce any evidence to support its belief that Doe's condition was potentially harmful to others, the plaintiff's concern about that potential risk of harm was not legitimate. Although the hearing officer found that the plaintiff had proffered a legitimate and nondiscriminatory reason for not reinstating Doe, she nonetheless concluded that Doe had proven by a preponderance of the evidence that that reason was pretextual and, therefore, that the plaintiff had discriminated against him. Thereafter, the hearing officer awarded damages to Doe's estate in the amounts of $15,910.34 for back pay and $15,000 for emotional distress.

The plaintiff appealed from the hearing officer's decision to the Superior Court,[4] which reversed the hearing

[1] General Statutes § 4-183 provides in relevant part: "Appeal to superior court. (a) A person who has exhausted all administrative remedies available

officer's decision. The court, *Maloney, J.*, concluded that the hearing officer had abused her discretion in failing to strike Doe's direct testimony. The court, quoting *Dragan* v. *Connecticut Medical Examining Board*, 24 Conn. App. 662, 667, 591 A.2d 150 (1991), rev'd on other grounds, 223 Conn. 618, 613 A.2d 739 (1992), began by stressing the importance of cross-examination as it is " 'an indispensable means of eliciting facts that may show motive, bias, interest or prejudice.' " The court then enunciated the commonly used rule regarding a witness who becomes unavailable for cross-examination: " 'If a witness testifies on direct examination but then becomes unavailable for cross-examination because of illness or death, the court has discretion to choose one of the following options: (1) to declare a mistrial, (2) to strike the direct, or (3) to allow the direct to stand. The proper choice depends upon such factors as the identity of the witness, the importance of the witness's direct testimony, and the nature of the case.' C. Tait & J. LaPlante, Handbook of Connecticut Evidence § 3.4.3 (2d Ed. 1988)."

The court found that Doe's testimony was "vitally important to the proceedings" and that his "credibility was at issue." Upon examination of all the testimony, the court found that "[i]n his direct testimony, [Doe] testified about the events and circumstances leading to his discharge, including his communications with [the plaintiff's] management; he testified as to his damages from lost wages and his attempts to mitigate those damages by finding other work; he testified as to his emotional distress, for which he was also seeking damages. The direct testimony consumed approximately one hundred seventy-five pages of transcript. The cross-examination, which consumed only fifty-five pages of

within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal. . . ."

transcript, dealt primarily with [Doe's] physical condition, the circumstances of his discharge and his communications with management. And it may be fairly characterized as only scratching the surface of those subjects." The trial court concluded that the plaintiff had been deprived of the opportunity to complete its cross-examination of Doe concerning crucial issues, including those related to Doe's credibility and to damages. Consequently, the court concluded that the hearing officer, at a minimum, should have stricken Doe's direct testimony, and that her failure to do so constituted an abuse of discretion. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment in part.

I

The first issue that we must address is whether the trial court had jurisdiction over the plaintiff's appeal. The court, sua sponte, raised the issue of jurisdiction,[5] and concluded that it had jurisdiction. The following additional facts are relevant to this claim. On September 22, 1993, the hearing officer signed and mailed copies of her final decision to all the parties. On September 27, 1993, the commissioner's public hearing administrator mailed to the parties a copy of that same decision, along with a standard form letter advising the parties of their rights to request reconsideration or to appeal. The plaintiff filed its appeal on November 12, 1993.

General Statutes § 4-183 (c) provides that an appeal must be filed with the Superior Court within forty-five days after the hearing officer's final decision was

[5] See *Sasso* v. *Aleshin*, 197 Conn. 87, 89, 495 A.2d 1066 (1985) ("[a]lthough this issue was not raised by the parties, the court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear").

mailed.[6] Failure to appeal within forty-five days deprives the court of subject matter jurisdiction. *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 854, 633 A.2d 305 (1993). Our resolution of this issue depends upon which of the two mailings operates as the mailing of the commission's final decision pursuant to § 4-183 (c).

The defendants focus on General Statutes § 46a-86 (a), which provides that *"the presiding officer* shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order,"[7] to argue that the final decision was mailed on September 22, the date that the hearing officer mailed copies of her final decision to all the parties. (Emphasis added.) They assert that, because the appeal was not filed until fifty-one days later, it was untimely.

The plaintiff, in contrast, claims that because the commission, on September 27, issued a letter stating that it was the "Notice of Final Order of Memorandum of Decision" and that "the enclosed Memorandum of

---

[6] General Statutes § 4-183 (c) provides in relevant part: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the attorney general in Hartford and file the appeal with the clerk of the superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the person appealing resides or, if that person is not a resident of this state, with the clerk of the court for the judicial district of Hartford-New Britain. . . ."

[7] General Statutes § 46a-86 (a) provides: "If, upon all the evidence presented at the hearing conducted pursuant to section 46a-84, the presiding officer finds that a respondent has engaged in any discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to cease and desist from the discriminatory practice and further requiring the respondent to take such affirmative action as in the judgment of the presiding officer will effectuate the purpose of this chapter."

Decision shall constitute the Final Order of the Commission upon this complaint," the appeal period began to run on that date. Because it appealed within forty-five days of September 27, the plaintiff claims that the appeal was timely.[8]

We agree with the plaintiff. General Statutes § 4-180 (c) provides that "[t]he final decision shall be effective when personally delivered or mailed or on a later date specified by the agency." The commission has adopted the practice of mailing its final decisions along with a standard cover letter notifying the parties that it is the final agency order and informing them of their appeal rights. That is precisely what the commission did in this case. Although the hearing officer sometimes independently mails her decision, that is not the customary practice. Additionally, in this case, the hearing officer's decision implied that she did not consider it final because she requested further information from the parties regarding attorney's fees. Furthermore, we have previously concluded that "[w]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Killingly* v. *Connecticut Siting Council*, 220 Conn. 516, 522, 600 A.2d 752 (1991). We conclude that because the final decision was mailed on September 27, the date when the commission issued its decision, along with the standard cover letter indicating that the decision was final and informing the parties of their appeal rights, the plaintiff's appeal was timely.

II

We now turn to the issue of whether the trial court properly concluded that the hearing officer had abused

---

[8] The plaintiff's appeal was actually filed forty-six days after September 27. Because the forty-fifth day was a holiday and the Superior Court clerk's office was closed, the deadline for filing its appeal was extended to the next business day. See General Statutes § 51-347c.

her discretion in permitting all of Doe's direct testimony to stand. As the trial court stated in its opinion, a court or hearing officer has the discretion to choose among three options when a witness has testified on direct examination and subsequently becomes unavailable for cross-examination: declare a mistrial, strike the direct testimony, or allow the direct testimony to stand. See C. Tait & J. LaPlante, supra, § 3.4.3, p. 47. In this case, the hearing officer allowed Doe's direct testimony to stand, and, on the basis of that testimony and other evidence in the record, found that the plaintiff had discriminated against Doe.[9]

[9] The defendants also claim that, by agreeing to postpone Doe's cross-examination, the plaintiff impliedly waived its right to cross-examine Doe. The plaintiff responds that the defendants cannot assert this claim on appeal because it was never explicitly raised before the trial court and, even if the claim can be asserted, the plaintiff at no point waived its right to cross-examine Doe. We agree with the plaintiff that the claim had not been waived.

The trial court found that "[t]he hearing officer permitted the delay and interruption of [Doe's] cross-examination to accommodate other [commission] witnesses on condition that [the plaintiff] preserved its right to complete its cross-examination of [Doe]; in particular, in her final decision, the hearing officer explicitly determined that [the plaintiff] did not waive its rights in that regard." Waiver is the intentional relinquishment of a known right. *Advest, Inc.* v. *Wachtel,* 235 Conn. 559, 569, 668 A.2d 367 (1995). While the issue of waiver depends upon questions of fact; *New York Annual Conference of the United Methodist Church* v. *Fisher,* 182 Conn. 272, 300, 438 A.2d 62 (1980); the ultimate determination of whether a party has waived a right is a question of law. The parties in this case do not dispute the *factual circumstances surrounding whether the plaintiff waived its right to cross-examine Doe,* namely, the plaintiff's agreement to postpone Doe's cross-examination; rather, they dispute whether that fact suffices to establish the elements of a legal waiver. Consequently, our review of the trial court's determination is plenary. *SLI International Corp.* v. *Crystal,* 236 Conn. 156, 163, 671 A.2d 813 (1996) ("[w]hen . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record" [internal quotation marks omitted]).

We agree with the trial court that the plaintiff at no point waived its right to proceed with its cross-examination of Doe. The plaintiff merely agreed to postpone the cross-examination at the request of the commission in order to accommodate other witnesses with the understanding that it would have the opportunity to continue its cross-examination of Doe at a later time.

It is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 391, 461 A.2d 422 (1983). Even if we were to presume that the hearing officer had abused her discretion in failing to strike that portion of Doe's testimony that pertained to the plaintiff's liability; see General Statutes § 4-183 (j); the plaintiff would need to prove that that testimony more probably than not affected the result. *State* v. *Payne*, 219 Conn. 93, 102–103, 591 A.2d 1246 (1991). We conclude that, because there was sufficient testimony by other witnesses regarding the issue of the plaintiff's liability, we need not determine whether the hearing officer abused her discretion in allowing to stand Doe's direct testimony that pertained to liability. Even if she had stricken that portion of Doe's direct testimony, significant evidence remained in the record from which the hearing officer reasonably could have concluded that the plaintiff had impermissibly discriminated against Doe on the basis of his physical disability. In contrast, however, we conclude that with regard to the issue of damages, the sole evidence in the record stems from Doe's direct testimony and from various items of documentary evidence admitted through him. Because the plaintiff was unable to cross-examine Doe on the issue of damages,

---

Notably, the hearing officer stated that "[Doe's] testimony was interrupted, and his cross-examination delayed at the [c]ommission's request, to allow other witnesses to testify. . . . [The plaintiff] was repeatedly assured that it would have a later opportunity to complete cross-examination." The plaintiff permitted the interruption of its cross-examination of Doe on the condition that another hearing date would be set for the cross-examination to continue. The hearing officer did, in fact, set a hearing date for that purpose in December, 1992. Because Doe became ill, however, the hearing date was canceled. Accordingly, we conclude that the trial court's determination that the plaintiff did not waive its right to cross-examine Doe was legally and logically correct and supported by the record.

particularly regarding whether Doe had made diligent efforts to mitigate his damages, and because no other witnesses were presented who were competent to testify as to that issue, we do not find that there was significant other evidence in the record to support the hearing officer's award of damages. Consequently, we must determine whether the hearing officer abused her discretion in failing to strike Doe's testimony pertaining to damages. We conclude that, because the plaintiff, who carried the burden of proving a failure to mitigate, was unable to cross-examine Doe, the sole witness who testified as to his efforts at mitigation, the hearing officer abused her discretion in failing to strike Doe's testimony regarding damages.

## A

### Liability

In this case, the hearing officer concluded that Doe had established that the plaintiff, on the basis of its belief or perception that Doe had AIDS, had discriminated against Doe by failing to reinstate him following his leave of absence. Our legislature has clearly stated that discrimination based on a physical disability is prohibited. See General Statutes § 46a-60 (a) (1).[10]

We have recently elaborated on the analysis that we undertake to determine whether a complainant has established that discrimination has occurred. When "a plaintiff cannot prove directly the reasons that motivated an employment decision . . . a plaintiff may establish a prima facie case of discrimination through inference by presenting 'facts [that are] sufficient to remove the most likely bona fide reasons for an employment action . . . .' *Tyler* v. *Bethlehem Steel Corp.*, [958 F.2d 1176, 1180 (2d Cir. 1992)]. From a showing that an employment decision was not made for legitimate

---

[10] See footnote 1.

reasons, a fact finder may infer that the decision was made for illegitimate reasons. It is in these instances that the *McDonnell Douglas-Burdine* model of analysis must be employed. ABA Section of Labor and Employment Law, Employment Discrimination Law, 1987–1989 Supplement (2d Ed. 1991) p. 2; see *Texas Dept. of Community Affairs* v. *Burdine*, [450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)]; *McDonnell Douglas Corp.* v. *Green*, [411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)].

"The plaintiff's burden of establishing a prima facie case is not onerous under this model. *Texas Dept. of Community Affairs* v. *Burdine*, supra, 450 U.S. 253. The plaintiff need prove only four elements by a preponderance of the evidence: (1) that he or she belongs to a protected class; (2) that he or she applied and was qualified for the position in question; (3) that despite his or her qualifications, the individual was rejected; and (4) that after the individual was rejected, the position remained open. Id., 252–53; *Miko* v. *Commission on Human Rights & Opportunities*, [220 Conn. 192, 203, 596 A.2d 396 (1991)]. Once a plaintiff has established a prima facie case of discrimination, a presumption of discrimination is created.

"Under the *McDonnell Douglas-Burdine* model, the burden of persuasion remains with the plaintiff. *Texas Dept. of Community Affairs* v. *Burdine*, supra, 450 U.S. 253; *Miko* v. *Commission on Human Rights & Opportunities*, supra, 220 Conn. 204. Once the plaintiff establishes a prima facie case, however, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason for the plaintiff's rejection. *Texas Dept. of Community Affairs* v. *Burdine*, supra, 254; *Miko* v. *Commission on Human Rights & Opportunities*, supra, 204. Because the plaintiff's initial prima facie case does not require proof of

discriminatory intent, the *McDonnell Douglas-Burdine* model does not shift the burden of persuasion to the defendant. Therefore, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.' *Texas Dept. of Community Affairs* v. *Burdine*, supra, 254–55; see *Miko* v. *Commission on Human Rights & Opportunities*, supra, 204. Once the defendant offers a legitimate, nondiscriminatory reason, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the proffered reason is pretextual. *Texas Dept. of Community Affairs* v. *Burdine*, supra, 255–56; *Miko* v. *Commission on Human Rights & Opportunities*, supra, 204." *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 107–108, 671 A.2d 349 (1996).

In this case, the hearing officer determined that Doe had established a prima facie case of discrimination and that he had proven by a preponderance of the evidence that the plaintiff's proffered legitimate, nondiscriminatory reason was pretextual. We recognize that the hearing officer made this decision on the basis of all of the evidence in the record, including Doe's direct testimony. We disagree, however, with the trial court that the hearing officer abused her discretion in considering that testimony, albeit affording that testimony less weight than any contradictory testimony presented and subjected to cross-examination.

The plaintiff's inability to cross-examine Doe completely does not factor into the first or second stage of the hearing officer's discrimination analysis in this case. First, the plaintiff could not have revealed anything in its cross-examination of Doe that reasonably would have defeated Doe's ability to establish a prima facie case of discrimination. As we have stated, Doe's burden

at this stage was not onerous. *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 107. Doe proved, and the plaintiff cannot reasonably dispute, that: (1) he was physically disabled; (2) he was qualified for his former position as a waiter for the plaintiff; (3) he was discharged from that position; and (4) his former position was available when he was discharged. See id., 107–108. Second, through Quinn's testimony, the plaintiff met its burden of articulating a legitimate, non-discriminatory reason for discharging Doe. Therefore, only the hearing officer's determinations that Doe had proven by a preponderance of the evidence that the plaintiff's proffered reason was pretextual, and that Doe had established that the plaintiff had impermissibly discriminated against him, were based upon all of the evidence in the record.

In this case, even if the hearing officer had excluded Doe's direct testimony in the third stage of her discrimination analysis, significant evidence remains in the record from which the hearing officer could have concluded that the plaintiff had impermissibly discriminated against Doe. From the testimony of Quinn and other employees of the plaintiff, the hearing officer could have reasonably concluded that Quinn had perceived Doe to be suffering from AIDS, that Quinn had requested medical documentation from Doe regarding his illness and his ability to work and that Quinn had not requested similar documentation from other employees who had taken leaves of absence, that Quinn had never discharged another employee while on leave, and that Quinn decided to discharge Doe without knowing whether Doe would return to work or whether Doe's condition posed a risk to others.

We have previously concluded that "[h]armless error analysis is available in the administrative context. The Uniform Administrative Procedure Act provides that if an individual's substantial rights have been prejudiced,

the case should be remanded unless but one conclusion is required by law. General Statutes § 4-183 (j) and (k); see also *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 329 n.21, 596 A.2d 426 (1991), on appeal after remand, 228 Conn. 545, 636 A.2d 1360 (1994); *Denby* v. *Commissioner*, 6 Conn. App. 47, 58–59, 502 A.2d 954 (1986); *Plastic Distributors, Inc.* v. *Burns*, 5 Conn. App. 219, 230, 497 A.2d 1005 (1985)." *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 110. Therefore, because there was significant evidence in the record, apart from Doe's testimony, from which the hearing officer could have concluded that the plaintiff had impermissibly discriminated against Doe, the hearing officer's failure to exclude that testimony was harmless and we need not decide whether the hearing officer abused her discretion. Accordingly, we reverse the trial court's decision that the hearing officer abused her discretion in allowing to stand Doe's direct testimony relating to the issue of liability.

B

Damages

After a hearing officer has determined that a member of a protected class has been discriminated against, the hearing officer "shall determine the damage suffered by the complainant" and "shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to pay the complainant the damages resulting from the discriminatory practice." General Statutes § 46a-86 (c) and (d). In general, the complainant has the burden of proving damages. See *Preston* v. *Keith*, 217 Conn. 12, 20, 584 A.2d 439 (1991).

One type of damages that is commonly awarded, and which the hearing officer found Doe was entitled to receive, is back pay. General Statutes § 46a-86 (b)

requires that any "amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. . . ." We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages. *Preston* v. *Keith,* supra, 217 Conn. 16 and n.5; *Vespoli* v. *Pagliarulo,* 212 Conn. 1, 3, 560 A.2d 980 (1989); *West Haven Sound Development Corp.* v. *West Haven,* 201 Conn. 305, 332, 514 A.2d 734 (1986). "What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier." (Internal quotation marks omitted.) *Vespoli* v. *Pagliarulo,* supra, 3; accord *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 446, 438 A.2d 708 (1980). Furthermore, we have concluded that the breaching party bears the burden of proving that the nonbreaching party has failed to mitigate damages. *Preston* v. *Keith,* supra, 21–22; see *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 86, 491 A.2d 363 (1985). We see no reason to stray from these established rules in the context of a discrimination complaint. Consequently, the plaintiff bears the burden of proving that Doe failed to make reasonable efforts to mitigate the amount of damages by seeking other employment.

At the hearing, the sole evidence presented on the issue of damages was Doe's direct testimony and certain pieces of documentary evidence admitted through him,[11] which indicated the wages Doe would have earned had he continued to work for the plaintiff in comparison to the amount that he did earn from other employers and from unemployment compensation dur-

---

[11] The documentary evidence consisted of Doe's W-2 forms, from the plaintiff and from other subsequent employers, and forms indicating the amount of unemployment compensation that he received.

ing the approximate ninety week period following his discharge. There was no testimony by other witnesses, whom the plaintiff could have cross-examined, as to damages.[12] Furthermore, the plaintiff did not have the opportunity to cross-examine Doe on the issue of damages. Although there was evidence to support the hearing officer's finding that he was entitled to some damages (i.e., Doe's W-2 forms), we cannot find enough evidence, apart from Doe's direct testimony, upon which the hearing officer could have determined that Doe had made reasonable efforts to mitigate. Therefore, because we cannot conclude that the hearing officer's failure to strike that testimony was harmless, we must address whether that failure to strike was an abuse of her discretion.

"We have stated that the test of cross-examination is whether there has been an opportunity for full and complete cross-examination rather than the use made of that opportunity." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 663, 638 A.2d 6 (1994); see General Statutes § 4-178 (5) (pursuant to the Uniform Administrative Procedure Act, "a party . . . may conduct cross-examinations required for a full and true disclosure of the facts"); *Gordon* v. *Indusco Management Corp.*, 164 Conn. 262, 271, 320 A.2d 811 (1973) (party must be able to "substantially and fairly [exercise]" right of cross-examination). To establish a violation of the right to cross-examination, a party who has been deprived of its opportunity to conduct a full and complete cross-examination must additionally show that such deprivation has caused sub-

---

[12] Some witnesses testified as to Doe's emotional state following the plaintiff's refusal to reinstate him. Because, however, § 46a-86 does not authorize an award of damages for emotional distress; *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 92–93, 653 A.2d 782 (1995); such testimony is no longer relevant. Additionally, although the hearing officer awarded damages for emotional distress, the defendants agree that Doe is no longer entitled to that portion of the award.

stantial prejudice. See *Pet* v. *Dept. of Health Services*, supra, 663–64; *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council*, 215 Conn. 474, 489, 576 A.2d 510 (1990).

Because the plaintiff bears the burden of proving that Doe failed to mitigate damages, therefore, it must have been afforded some meaningful opportunity to cross-examine the sole witness to testify on that issue. Apart from the W-2 forms from Doe's subsequent employers, the sole source of evidence on the reasonable efforts that Doe had made to limit his damages came from Doe's direct testimony. For example, Doe testified that he had looked for jobs only in the Farmington valley area and in restaurants similar to that of the plaintiff and that, at one point, he had left a job because it interfered with his ability to collect unemployment benefits. Although he offered explanations for those decisions, whether they were reasonable could have been determined only after they had undergone the rigors of cross-examination. Doe's reasons or motivations were not revealed adequately, if at all, through the testimony of other witnesses or through documents or records. Consequently, because the plaintiff was deprived of its opportunity to cross-examine Doe fully and completely with respect to the issue of damages, and because that deprivation substantially prejudiced the plaintiff with respect to its ability to meet its burden regarding Doe's efforts to mitigate, we conclude that the hearing officer abused her discretion in considering Doe's testimony on the issue of damages. Accordingly, that portion of Doe's testimony should have been stricken.[13]

---

[13] The parties also dispute whether General Statutes § 52-172 required the hearing officer to consider Doe's direct testimony. The defendants claim that had the hearing officer decided to strike Doe's direct testimony, his testimony, as heard by others during the hearing, would have become "declarations of the deceased" pursuant to § 52-172 and, consequently, would have been admissible under that statute. Additionally, the defendants argue that other statements made by Doe, apart from his hearing testimony, conveying

Finally, the defendants claim that even if the trial court was correct in concluding that the hearing officer had abused her discretion, the trial court's remand instructions were improper. The defendants agree that the trial court had the authority to direct the hearing officer to strike Doe's testimony. They argue, however, that the trial court exceeded its authority in ordering the hearing officer to render a new decision "on the basis of the record without that testimony." In this case, because we disagree with the trial court's order striking Doe's testimony in its entirety, we also disagree with its remand instructions.

A court must be able, in certain circumstances, to order a particular agency action. General Statutes § 4-183 (k) provides us with that authority. That statute provides in part that "[i]f a particular agency action is

---

much of the same information would have been admissible. The defendants further argue that because such declarations would have been less reliable than Doe's direct testimony that was not subject to cross-examination, the hearing officer's decision to permit Doe's direct testimony to stand was the best alternative. The plaintiff understood the defendants as claiming that § 52-172 applied directly to Doe's direct testimony and that the testimony was an admissible "declaration." Subsequently, at oral argument, the defendants clarified that they are not claiming that Doe's direct testimony is a "declaration" under § 52-172; rather, they claim that because other statements that Doe had made during his life would have been admissible "declarations," and because anyone who had been present during Doe's direct testimony would have been able to testify as to what they had heard, the hearing officer made the best decision available to her in permitting to stand Doe's direct testimony that was not subject to cross-examination, which is more reliable than these "declarations."

We refrain from deciding whether and how § 52-172 applies to a consideration of Doe's testimony regarding damages for two reasons. First, a resolution of whether "declarations" admissible under § 52-172 are less reliable than testimony not subject to cross-examination depends upon matters that are not in the record, such as which statements the defendants would have introduced as "declarations." Second, because cross-examination is the tool by which the reliability of testimony is examined, it is not clear, as a matter of law, that testimony not subject to cross-examination is more reliable than "declarations" admitted under § 52-172. We leave any decision pertaining to § 52-172 to the hearing officer on remand. See the remaining text of this opinion.

required by law, the court, on sustaining the appeal, may render a judgment that . . . orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action." In this case, logic mandates that a court be permitted to order an agency to take certain actions, such as to hold additional proceedings. Otherwise, our decision to simply strike Doe's testimony would unfairly deprive the defendants of at least the opportunity to prove Doe's damages by alternative means. Therefore, we order the hearing officer to hold a hearing on the issue of damages.[14]

The judgment is reversed in part and the case is remanded to the trial court with direction to remand the matter to the commission for further proceedings.

In this opinion CALLAHAN, BORDEN and NOR-COTT, Js., concurred.

BERDON, J., concurring. I concur in the result.

---

[14] In the hearing, the hearing officer is free to consider, among other things, properly admitted evidence of damages; see footnote 13; and whether the documentary evidence; see footnote 11; indicating that Doe had worked for a total of thirty-four weeks following his discharge, sufficiently demonstrates a reasonable effort to mitigate.