[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT 
On June 27, 1997, the plaintiff, Maria Tordonato, commenced this action. The subsequent revised complaint of December 1, 1998, alleges discriminatory employment practices and negligent infliction of emotional distress by the defendant Colt's Manufacturing Company, Inc. (Colt's). Specifically, the plaintiff alleges discriminatory discharge based on a physical disability in violation of General Statutes § 46a-60 (count CT Page 15874 one); discriminatory practices as to the terms and conditions of her employment due to the plaintiff's physical disability, also in violation of § 46a-60 (count two); and negligent infliction of emotional distress in connection with her layoff (count three). This case comes before the court on a motion for summary judgment filed by the defendant, as to all three counts of the plaintiff's revised complaint.
The pleadings, affidavits and other documentary evidence submitted reveal, inter alia, the following undisputed facts. The plaintiff was employed by the defendant from December 10, 1973, until her layoff on April 8, 1996. At all relevant times, the plaintiff's employment was governed by a collective bargaining agreement (the agreement) between the defendant and the United Auto Workers union. The agreement provided for bumping rights i.e. the displacement of a less senior employee by a more senior one, under certain circumstances.
The plaintiff worked as a receiving inspector of final parts from December 10, 1973, until October 23, 1995, when the defendant eliminated her position pursuant to the seniority provisions in the collective bargaining agreement. She then transferred into department 152, final inspection, by bumping an employee with less seniority. This new position required heavy lifting. Plaintiff had a pre-existing heart condition.[1]
On November 21, 1995, the defendant received a medical report from the plaintiff's physician, Dr. Nino, limiting her to light physical work with lifting restrictions. These restrictions prevented the plaintiff from performing her duties in department 152 and the plaintiff was furloughed on November 22, 1995. On January 2, 1996, the defendant recalled the plaintiff and assigned her to the spare parts department where she remained until she was bumped on April 8, 1996. (See Deposition of Maria Tordonato, March 1, 2000 [Plaintiff's Deposition], Defendant's Exhibit B, p. 36; Defendant's Motion, p. 3.)
At an April 8th meeting of Mark Stepanik, the human resources manager at Colt's, plaintiff and her union representative, Lester Harding there was a discussion of open positions on the day shift (so limited at plaintiff's request) and plaintiff's ability to perform them. Defendant concluded that she could not perform any of the open positions and laid plaintiff off. In September of 1996, the plaintiff was recalled to work and assigned to the barrel inspection department.
On March 1, 2000, the defendant filed a motion for summary judgment along with a memorandum of law, the affidavit of Mark Stepanik (Exhibit A) and a transcript of the plaintiff's deposition (Exhibit B). The plaintiff filed a memorandum of law in opposition. The defendant filed a reply memordanum in support of its motion along with the supplemental CT Page 15875 affidavit of Stepanik dated April 24, 2000. This was followed by the plaintiff's surreply, accompanied by the plaintiff's affidavit dated August 10, 2000. The court subsequently heard oral argument.
 STANDARD 
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . .In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Miles v.Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). "A genuine issue [of fact] has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citations omitted; internal quotation marks omitted.) Urban Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378, 260 A.2d 596 (1969).
"`[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party.' Sartor v. Arkansas Natural Gas Corp.,321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967 (1944)." Tryon v. Town ofNorth Branford, 58 Conn. App. 702, 716, 755 A.2d 317 (2000).
 AS TO COUNTS ONE AND TWO 
The plaintiff claims in count one that the defendant wrongfully terminated her employment "on the pretext that based on her medical restrictions, there was no work available." (Plaintiff's Revised Complaint, December 3, 1998 [Revised Complaint], count one, ¶ 15.) The plaintiff claims in count two that the defendant "refused to provide suitable terms and/or conditions of employment for [her] with the underlying pretext that based upon [her] medical restrictions, there was no suitable work available . . . [although] [s]ubsequent to [her] termination on April 8, 1996 . . . other positions were available . . . which plaintiff was capable, willing and qualified to perform." (Revised Complaint, count two, ¶¶ 15, 16.)
Pursuant to the Connecticut Fair Employment Practices Act (the Act), CT Page 15876 General Statutes § 46a-60(a)(1), it is unlawful "[f]or an employer . . . except in the case of a bona fide occupational qualification . . . to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability. . . ." It is also unlawful "[f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice. . . ." General Statutes § 46a-60(a)(4).
Although the plaintiff's claim is based on alleged violations of a state statute, "in interpreting the [Act] our courts apply federal case law dealing with federal anti-discrimination statutes for the purpose of applying and analyzing the essential elements of a discrimination claim and whether it is viable in the summary judgment context." Denault v.Connecticut General Life Ins. Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 050418 (June 29, 1999, Corradino,J.); see Board of Education v. Commission on Human Rights andOpportunities, 176 Conn. 533, 527, 409 A.2d 1013 (1979); Pik-Wik Stores,Inc. v. Commission on Human Rights and Opportunities, 170 Conn. 327,330, 365 A.2d 1210 (1976); see also Ann Howard's Apricots Restaurant v.Commission on Human Rights and Opportunities, 237 Conn. 209, 224-26,676 A.2d 844 (1996) (applying federal standard); Levy v. Commission onHuman Rights Opportunities, 236 Conn. 96, 107-08, 671 A.2d 349 (1996) (same). "Nevertheless, we have also recognized that, under certain circumstances, federal law defines the beginning and not the end of our approach to the subject." (Internal quotation marks omitted.) State v.Commission on Human Rights Opportunities, 211 Conn. 464, 470,559 A.2d 1120 (1989).
"Under federal law, there are four general theories of employment discrimination: disparate treatment, adverse or disparate impact, perpetuation into the present of the effects of past discrimination, and failure to make reasonable accommodation. ABA Section of Labor and Employment Law, Employment Discrimination Law (2d Ed. 1983) p. 1. To date, in Connecticut, we have recognized the disparate treatment and adverse impact theories of employment discrimination." Levy v. Commissionon Human Rights Opportunities, supra, 236 Conn. 103-104. "This [case] requires consideration of only the `disparate treatment' type of case. Used in this general sense, `disparate treatment' simply refers to those cases where certain individuals are treated differently than others. . . .The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status." (Citation omitted.) Id., 104.
"Under the analysis of the disparate treatment theory of liability, there are two general methods to allocate the burdens of proof: (1) the CT Page 15877 mixed-motive/Price Waterhouse model; Price Waterhouse v. Hopkins,490 U.S. 228, 246, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); and (2) the pretext/McDonnell Douglas-Burdine model. Texas Dept. of Community Affairsv. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981);McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817,36 L.Ed.2d 668 (1973)." Id., 104-105.
The present case requires the McDonnell Douglas-Burdine model because the plaintiff's claim is based on pretext. "Often, a plaintiff cannot prove directly the reasons that motivated an employment decision. Nevertheless, a plaintiff may establish a prima facie case of discrimination through inference by presenting facts [that are] sufficient to remove the most likely bona fide reasons for an employment action. . . .From a showing that an employment decision was not made for legitimate reasons, a fact finder may infer that the decision was made for illegitimate reasons." (Citation omitted; internal quotation marks omitted.) Id., 107; see Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. 248; McDonnell Douglas Corp. v. Green, supra, 411 U.S. 792.
Accordingly, "[i]n the absence of direct evidence of employment discrimination, the McDonnell Douglas-Burdine model of analysis must be employed." (Internal quotation marks omitted.) Langner v. The Stop ShopSupermarket, Superior Court, judicial district of New Haven at New Haven, Docket No. 377385 (January 27, 2000, Licari, J.); see Ann Howard'sApricots Restaurant, Inc. v. Commission on Human Rights Opportunities, supra, 237 Conn. 225; McDonnell Douglas Corp. v. Green, supra, 411 U.S. 802-04; Texas Dept. of Community Affairs v. Burdine, supra,450 U.S. 252-53. "Under this model, `[f]irst, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Langner v. The Stop ShopSupermarket, supra, Superior Court, Docket No. 377385, quoting Wroblewskiv. Lexington Gardens, Inc., 188 Conn. 44, 61, 48 A.2d 801 (1982).
The defendant moves for summary judgment arguing that the plaintiff has failed to establish a prima facie case of discrimination based on physical disability. The defendant further argues that even if the plaintiff did prove her case, it has articulated a legitimate, nondiscriminatory reason for her layoff. Moreover, the defendant argues that throughout the plaintiff's deposition, she never identified any open positions for which she was qualified. CT Page 15878
In opposition, the plaintiff maintains that she has properly established the elements of a prima facie case and consequently raised a genuine issue of material fact as to whether the defendant's proffered reason for discharge was a pretext for unlawful discrimination. She argues that at the time of and during her layoff, many positions were open within her job classification that she could perform. The plaintiff claims that the defendant failed to offer and/or consider her for these positions and instead filled them with less senior employees.[2]
Both the plaintiff and defendant rely heavily on the plaintiff's deposition to support their arguments. A close reading of the deposition discloses obvious communication problems between the questioner and deponent, resulting in colloquies which can only be termed confusing. "Deposition testimony often involves opinions and calls into question the credibility of the deponent. It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.) Tryon v. Town of North Branford, supra, 58 Conn. App. 716.
 1. Prima facie case of discrimination
To establish a prima facie case under the McDonnell Douglas-Burdine model, "[t]he plaintiff need prove only four elements by a preponderance of the evidence: (1) that . . . she belongs to a protected class; (2) that . . . she applied to and was qualified for the position in question; (3) that despite. . . her qualifications, [she] was rejected; and (4) that after [she] was rejected, the position remained open. . . .Once a plaintiff has established a prima facie case of discrimination, a presumption of discrimination is created." (Citation omitted; internal quotation marks omitted.) Ann Howard's Apricots Restaurant v. Commissionon Human Rights and Opportunities, supra, 237 Conn. 225.
The defendant argues it is entitled to summary judgment because the plaintiff cannot establish a prima facie case of discrimination. Specifically, the defendant maintains that the plaintiff has not met her burden because her layoff did not occur under circumstances that give rise to an inference of discrimination. The defendant argues that at the time of her layoff, there were no available positions that the plaintiff was qualified for and physically able to perform. Therefore, in order to comply with the physical restrictions placed on her by her physician and the terms of the collective bargaining agreement, the defendant laid her off
In order to meet the first required element, the plaintiff must prove CT Page 15879 that she is a member of a protected class. General Statutes § 46a-51
(15) defines "physically disabled" as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic process or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." The plaintiff testified that she suffered a heart attack on the job in approximately 1991, and subsequently took five to six weeks off from work. (See Plaintiff's Deposition, pp. 26-27.) It is uncontested that, in October of 1995, she was transferred to department 152, which required heavy lifting, pulling and strenuous duties, that she had a heart condition known as mitral stenosis and that she was subsequently restricted in lifting at work. On the basis of this record, the court concludes that the plaintiff was "physically disabled" within the meaning of § 46a-51 (15). See also Adriani v. Commission on Human Rights andOpportunities, 220 Conn. 307, 314 n. 7, 596 A.2d 426 (1991) (court held that the plaintiff's hypertension qualified as a "physical disability" as defined in § 46a-51 (15)).
The next two elements require the plaintiff to prove that she was qualified for a position and rejected. The defendant argues that the plaintiff never identified an actual open position for which she was qualified and rejected. It argues that the only open position she mentions is that of load receiver, which she admittedly cannot physically perform. (See Plaintiff's Deposition, pp. 53-54.) To the contrary, in her deposition the plaintiff identified assembly and screening positions in the shop which were open at the time of her layoff, for which she maintains she was qualified and capable of performing. (See Plaintiff's Deposition, pp. 51-52.) She also swears in her affidavit that during her layoff period, "many jobs became open and available which I was qualified to perform." (Plaintiff's affidavit, dated August 10, 2000.) The plaintiff also testified that she was rejected from those positions as evidenced by the fact that other less senior employees were chosen to fill those positions. (See Plaintiff's Deposition, p. 53.) She further contends that her rejection from open positions is evidenced by the fact that she was not called back to work until September of 1996, after complaining that individuals with less seniority were being called back to work. (See Plaintiff's Opposition, p. 8.)
Finally, the fourth element requires that the position remain available. The plaintiff identified in her deposition open positions not offered to her but filled by others with less, not greater, seniority. Against the backdrop of a unionized workplace operating under a collective bargaining agreement, this must be considered an available position for purposes of this motion. CT Page 15880
In the absence of any evidence that the plaintiff was physically restricted from performing these identified positions, and viewing the evidence in the light most favorable to the plaintiff, there are genuine issues as to the material facts essential to a prima facie case.
 2. Legitimate, Nondiscriminatory Reason
"Once the plaintiff establishes a prima facie case . . . the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason for the plaintiff's rejection." Ann Howard'sApricots Restaurant v. Commission on Human Rights Opportunities, supra,237 Conn. 225. The defendant argues that even if the plaintiff establishes a prima facie case, it has articulated a legitimate nondiscriminatory reason for the plaintiff's layoff: the plaintiff was properly bumped from her position by a more senior employee pursuant to the collective bargaining agreement. It further argues that there is no evidence in the record suggesting that its decision to lay off the plaintiff was based on her disability. (See Defendant's Memorandum in Support of its Motion, p. 8.) Although the defendant articulates a legitimate nondiscriminatory reason for bumping the plaintiff out of her position, it fails to articulate a legitimate nondiscriminatory reason for rejecting the plaintiff from other suitable open positions at the time of her layoff and throughout the time that she remained laid off. Rather the defendant merely contests plaintiff's statement that there were suitable positions open. Accordingly, viewing the evidence in the light most favorable to the plaintiff, the defendant has not met its burden of articulating a legitimate nondiscriminatory reason for the plaintiff's layoff and defendant's failure to hire her back earlier.
 3. Pretext
"Once the defendant offers a legitimate, nondiscriminatory reason for its conduct, the plaintiff must then have, an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . .[T]o defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the [unlawful basis] was the real reason for the discharge. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Langnerv. Stop and Shop Supermarket, supra, Superior Court, Docket No. 377385.
The plaintiff argues that the defendant laid her off and refused to provide suitable terms and conditions of employment for her with the CT Page 15881 underlying pretext that, due to her medical limitations, there were no suitable positions available to her. The plaintiff argues that "this explanation was a pretext since there were jobs available for which [the] plaintiff was capable and qualified, yet the defendant refused to consider [the] plaintiff for any of these positions." (Plaintiff's Opposition, p. 2.) The plaintiff's deposition testimony to such effect has been previously noted. Further, the plaintiff maintains that during the meeting at which she was laid off, Stepanik never asked her if she could perform "offered" positions, but rather independently concluded that she was unable to perform the jobs due to her lifting restrictions. She stated in her deposition that, "they decide for me. They just make believe that they wanted to show me the job . . . just a formality." (Plaintiff's Deposition, pp. 43, 45.)
"[I]n employment discrimination cases, [a] trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. . . .Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." (Internal quotation marks omitted.) Langner v. The Stopand Shop Supermarket, supra, Superior Court, Docket No. 377385. The court finds a genuine issue of material fact as to whether the defendant's articulated rational for its actions is a mere pretext for discrimination.
 AS TO COUNT THREE 
Count three of the revised complaint alleges negligent infliction of emotional distress in the layoff process. The defendant moves for summary judgment arguing, inter alia, that its conduct was not unreasonable.
"[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp.,243 Conn. 66, 88-89, 700 A.2d 655 (1997); see also Rosenberg v. MeridenHousing Authority, Superior Court, judicial district of New Haven, Docket No. 377376 (October 29, 1999, Licari, J.).
Here, the plaintiff essentially claims that she was wrongfully laid off due to her physical disability, under the pretext that there was no CT Page 15882 suitable work available. Our courts have consistently found conduct of a similar magnitude insufficient to support a cause of action. See, e.g.,Parsons v. United Technologies Corp., supra, 243 Conn. 66 (Supreme Court affirmed trial court's granting of a motion to strike a claim where at-will employee was fired without notice and escorted out of the building by security); Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580,711 A.2d 747, cert. denied, 24 Conn. 911, 718 A.2d 17 (1998) (court found insufficient evidence where employee terminated without advance warning in a private meeting); Chieffalo v. Norden Systems, 49 Conn. App. 474,714 A.2d 1261 (1998) (evidence that employee fired in front of another employee and escorted out of building in front of twenty other employees insufficient to show unreasonableness); Rosenberg v. Meriden HousingAuthority, supra, Superior Court, Docket No. 377376 (court found conduct reasonable where employee not permitted to respond to allegations made at executive session regarding his conduct and status and was told after he was fired that the chairperson did not like him); Pagan v. FloydManufacturing Co., Superior Court, judicial district of Hartford at Hartford, Docket No. 058355 (February 18, 2000, Hennessey, J.) (employee could not sustain claim where employer failed to provide light duty when available, threw down paper in a bad way at employee and falsely accused him of taking unexcused absences). Even viewing the evidence in the light most favorable to plaintiff, the defendant's conduct in the layoff process was not unreasonable and the defendant is entitled to judgment on this count as a matter of law.
 CONCLUSION
Pursuant to the foregoing, the defendant's motion for summary judgement is denied as to counts one and two, and granted as to count three.
James T. Graham Superior Court Judge