[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#112)
On August 23, 1995, the plaintiff, Connie Langner, filed a complaint against the defendant, Stop Shop Companies, Inc. The allegations asserted in the complaint arise out of the plaintiff's employment with the defendant and the termination of this employment. In the complaint, the plaintiff asserts that the defendant unlawfully discriminated against her on the basis of her gender and disability in failing to promote her and in terminating her employment. The plaintiff also asserts that the defendant's termination decision constituted discriminatory retaliation. The defendant filed an answer and special defenses in November, 1996.[1] On July 15, 1999, the defendant filed a motion for summary judgment in which it asserts that it is entitled to summary judgment on all the claims asserted in the complaint. In support of its motion, the defendant filed a memorandum of law (Defendant's Memorandum), the affidavits of Walter Reynolds and Michael Link, uncertified excerpts from the plaintiff's deposition and several documents. On October 18, 1999, the plaintiff filed a memorandum of law in opposition to the motion for summary judgment (Plaintiff's Memorandum), supported by an uncertified copy of the plaintiff's deposition[2] and several documents. The court heard the parties' oral argument on the motion for summary judgment on October 25, 1999.
In the complaint, the plaintiff makes the following allegations regarding her employment with the defendant. On October 10, 1989, the plaintiff was hired by the defendant for the position of clerk in the transportation department of the defendant's transportation facility. During the time she was employed by the defendant, the plaintiff occasionally had migraine headaches. These headaches would cause her to be temporarily incapacitated. On some occasions, the plaintiff took "sick time" off from work due to migraines and problems associated with menstruation. During the plaintiff's employment with the transportation department, Michael Link was the department's manager and Walter CT Page 1278 Reynolds was its operations manager. Over the course of her employment, Reynolds and Link reviewed the plaintiff's performance and rated her job performance as "above standard."
In February, 1994, upon learning that the defendant was advertising a dispatcher position, the plaintiff told Link and Reynolds that she wanted to be promoted to the position. The plaintiff alleges that approximately one week later, Link told her that she was not sufficiently reliable to be considered for the dispatcher position. The plaintiff alleges that she then told Link that she believed that in making this decision, he was discriminating against her on the basis of her gender. The defendant subsequently promoted a male employee to the dispatcher position.
Thereafter, the plaintiff alleges that her working environment changed and became "tense" due to the promotion decision and her statement regarding her belief that it was discriminatory. On July 25, 1994, Link and Reynolds met with the plaintiff and questioned her about alterations that were made to her attendance record. The defendant terminated the plaintiff's employment the following day. The plaintiff alleges that the defendant claimed that she was terminated for falsifying her time record. The plaintiff filed a complaint regarding the defendant's conduct with the Connecticut Commission on Human Rights and Opportunities (commission) on November 2, 1994. The commission released its jurisdiction over the matter on June 20, 1995.
In the complaint before this court, the plaintiff alleges that the defendant's refusal to promote her constituted unlawful discrimination on the basis of gender and disability in violation of Title 46a of the Connecticut General Statutes. She also alleges that the defendant "continued to discriminate against her" in terminating her employment on the basis of gender and disability and in retaliation for her assertion that the defendant had discriminated against her in denying her the promotion. The plaintiff seeks compensatory and punitive damages, attorneys' fees, and injunctive relief including reinstatement to the dispatcher position with retroactive pay and benefits.
Summary Judgment Standard
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party CT Page 1279 is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Orkney v. Hanover Ins. Co.,248 Conn. 195, 201, 727 A.2d 700 (1999). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . ." (Citation omitted; internal quotation marks omitted.) Great Country Bank v.Pastore, 241 Conn. 423, 436, 696 A.2d 1254 (1997).[3]
"Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial." Id.
Employment Discrimination Standards
Pursuant to General Statutes § 46a-60 (a)(1), it is unlawful "[f]or an employer . . . except in the case of a bona fide occupational qualification or need . . . to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . or physical disability. . . ." Pursuant to § 46a-60 (a)(4), it is unlawful "[f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice. . . ."
Discrimination in employment based on gender is also prohibited under federal law pursuant to Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e et seq. Although the language of Title VII differs slightly from that of the Connecticut statute and "[a]lthough we are not bound by federal interpretation of Title VII provisions, [w]e have often looked to federal CT Page 1280 employment discrimination law for guidance in enforcing our own anti-discrimination statute." (Internal quotation marks omitted.)State v. Commission on Human Rights Opportunities,211 Conn. 464, 469-70, 559 A.2d 1120 (1989); see also Brittel v. Departmentof Correction, 247 Conn. 148, 164, 717 A.2d 1254 (1998). Disability-based discrimination is prohibited under federal law pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12101
et seq. Consequently, in considering allegations of discrimination based on disability brought under state law, Connecticut courts "review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes." Levy v. Commission on Human Rights Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996). "Nevertheless, we have also recognized that, under certain circumstances, federal law defines the beginning and not the end of our approach to the subject." (Internal quotation marks omitted) State v. Commission on Human Rights Opportunities, supra, 211 Conn. 470.
Failure to Promote
The defendant advances both procedural and substantive arguments in support of its position that it is entitled to summary judgment on the plaintiff's allegation that the defendant discriminated against her in failing to promote her to the dispatcher position.
A. Procedural Argument
Procedurally, the defendant argues that the court does not have jurisdiction over this allegation because the plaintiff failed to comply with the procedural requirements of General Statutes §46a-82.[4] Specifically, the defendant contends that because § 46a-82 (e) requires that a person must file a complaint of discrimination within 180 days after the alleged act of discrimination, and because the promotion decision occurred in February, 1994, the plaintiff was required to file her complaint with the Connecticut Commission on Human Rights and Opportunities by August, 1994. Because the plaintiff did not file her complaint with the commission until November, 1994, the defendant argues, her allegations regarding the promotion are time barred. The plaintiff responds that these allegations are not time barred because she is alleging that the defendant's conduct constituted a "single, continuing violation, that is, the discrimination began with the defendant's failure to promote her to the CT Page 1281 dispatcher position, and continued until her termination in July, 1994." (Plaintiff's Memorandum, pp. 32-33.)
It is well settled that before filing suit for employment discrimination, a plaintiff must first invoke and exhaust the administrative remedies provided by the federal or state fair employment practice statutes. See Sullivan v. Board of PoliceCommissioners, 196 Conn. 208, 217, 491 A.2d 1096 (1985). Section46a-82 (e) provides that a complaint of discrimination "filed pursuant to this section must be filed [with the commission] within one hundred and eighty days after the alleged act of discrimination. . . ."
However, in discussing the limitations period applicable to complaints brought under Title 46a, Connecticut courts have recognized a "`continuing violation' theory in the context of discriminatory employment practices." State v. Commission onHuman Rights Opportunities, supra, 211 Conn. 472. Under this theory, "discrete incidents occurring during a continuum of discriminatory employment practices may constitute fresh violations of General Statutes . . . § 31-126 (a) [now (1999 Rev.) § 46a-60]." Id., 473.
This principle is also recognized by federal courts in construing the limitations periods for the federal discrimination statutes. "Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action. . . . This requirement functions as a statute of limitations . . . in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court. . . ." (Citations omitted.) Quinn v.Green Tree Credit Corp., 159 F.3d 759, 765 (2nd Cir. 1998). "The continuing-violation exception extends the limitations period for all claims of discriminatory acts committed under an ongoingpolicy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." (Emphasis in original; internal quotation marks omitted.) Id. "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (Internal quotation marks omitted.) Id. "However, a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." (Internal CT Page 1282 quotation marks omitted.) Id., 766.
Here, the plaintiff contends that the evidence shows that, following her decision to seek the promotion in February, 1994, she "suffered from an adverse work environment . . ." and "suffered economically because she no longer got overtime," conduct which she attributes to her belief "that her male supervisors did not want to see her `move up the ladder.'" (Plaintiff's Memorandum, pp. 34-36.) Specifically, the plaintiff testified that after the defendant denied her the promotion, she was subjected to the following conduct: Her supervisors questioned her decisions, when they had not previously done so; the system for assigning overtime was changed and now excluded her; she was criticized for her job performance, work habits and absences from work; she discovered a co-worker kept a notebook that included notes about her; she was left out of conversations; and she was not treated as well as she had been. (Plaintiff's Memorandum, Exhibit 2, pp. 42-51.) This conduct, together with the relatively short period of time between the defendant's decisions to deny her the dispatcher promotion in February, 1994, and to terminate her employment in July, 1994, is sufficient to raise a genuine issue of material fact as to whether the defendant's decisions constituted a continuing violation of Title 46a. See State v. Commission on Human Rights Opportunities, supra, 211 Conn. 476; Simmons v. People's Bank, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 359862 (April 23, 1999, Skolnick, J.); see also Cornwell v. Robinson,23 F.3d 694, 704 (2d Cir. 1994); Felkner v. Pepsi-Cola Co.,863 F. Sup. 71, 75-6 (D. Conn. 1994). Summary Judgment is denied with respect to the defendant's procedural argument that the plaintiff's failure to promote claim is time barred and that the court is without jurisdiction to hear this case.
B. Substantive Argument
The defendant also argues that it is entitled to summary judgment on the plaintiff's allegations that the defendant's decision to deny her the promotion to the dispatcher position was discriminatory because the plaintiff cannot establish a prima facie case of either gender or disability discrimination. Also, the defendant argues it articulated a legitimate nondiscriminatory reason for its decision and the plaintiff failed to show its reason was a pretext for unlawful discrimination. The plaintiff asserts that she established the elements of a prima facie case and raised genuine issues of CT Page 1283 material fact that the reason the defendant articulated for its decision was a pretext for unlawful discrimination.
In the absence of direct evidence of employment discrimination, "the McDonnell Douglas-Burdine model of analysis must be employed." Ann Howard's Apricots Restaurant, Inc. v. Commissionon Human Rights Opportunities, 237 Conn. 209, 225, 676 A.2d 209
(1996); see McDonnell Douglas Corp. v. Green, 411 U.S. 792,802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973); TexasDept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53,101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). Under this model, "[f]irst, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (Citations omitted; internal quotation marks omitted.) Wroblewski v. Lexington Gardens, Inc.,188 Conn. 44, 61, 448 A.2d 801 (1982).[5] This model applies both to the plaintiff's allegation that the defendant's promotion decision was based on her gender and to her contention that the decision was based on her disability.
1. Prima Facie Case
"The plaintiff's burden of establishing a prima facie case is not onerous under this model. . . . The plaintiff need prove only four elements by a preponderance of the evidence: (1) that he or she belongs to a protected class; (2) that he or she applied and was qualified for the position in question; (3) that despite his or her qualifications, the [plaintiff] was rejected; and (4) that after the [plaintiff] was rejected, the position remained open. . . . Once a plaintiff has established a prima facie case of discrimination, a presumption of discrimination is created." (Citations omitted; internal quotation marks omitted.) AnnHoward's Apricots Restaurant, Inc. v. Commission on Human Rights Opportunities, supra, 237 Conn. 225.[6]
In this case, the defendant concedes that the plaintiff meets the first element, i.e. that she is a member of a protected class due both to her gender and, for purposes of its motion for CT Page 1284 summary judgment, because her migraine headaches constitute a physical disability as defined by General Statutes § 46a-60. However, the defendant does argue that the plaintiff cannot met the second element of a prima facie case of either gender or disability discrimination because she does not establish that she was qualified for the dispatcher position. Specifically, the defendant claims that "an essential feature of the dispatcher position was reliability." (Defendant's Memorandum, p. 17.) The defendant alleges that the evidence shows that the plaintiff was frequently absent from work and often left work early and that this conduct made her unqualified for the dispatcher position. The plaintiff counters that the performance evaluations she received over the course of her employment establish that she was qualified for the dispatcher position and rebut the defendant's allegation that her attendance was a major problem. She claims that the question of whether or not she was qualified for the position is an issue of fact.
"In determining whether an employee meets the qualifications of his job and whether [his performance] is satisfactory courts may rely — as they often must — on evaluations rendered by supervisors. . . . Job performance cannot be assessed in a vacuum; the ultimate inquiry is whether an employee's performance meets his employer's legitimate expectations." (Citations omitted; internal quotation marks omitted.) Vandel v. StandardMotor Products, Inc., 52 F. Sup.2d 344, 348 (D. Conn. 1999). It is true that, "[i]n addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." Tyndall v. National Educational Centers, Inc. ofCalifornia, 31 F.3d 209, 213 (4th Cir. 1994). The evidence indicates that on at least three occasions, Reynolds warned the plaintiff that her attendance was a problem. (Defendant's Memorandum, Exhibit Q, ¶¶ 8, 9; Exhibits F, G, K; Plaintiff's Memorandum, Exhibit 2, p. 21.) However, the evidence also establishes that in six appraisals of the plaintiff's performance from 1990 to 1993, her supervisors rated her attendance and punctuality as "average" and "acceptable" or listed the number of days she was absent and characterized her as "a valuable member of the/our transportation team." (Plaintiff's Memorandum, Exhibits 4-9.) Her supervisors only raised her attendance as an issue in the September 6, 1993, appraisal in which they noted that the operations manager discussed the issue with the plaintiff at an earlier meeting. (Plaintiff's Memorandum, Exhibit 9, p. 6.) In this appraisal, in their overall evaluation of the CT Page 1285 plaintiff's performance, her supervisors noted: "Transportation operators can always rely on her to assist and excel when the distribution flow becomes demanding, and operational needs must be met without hesitation." Id. Moreover, the plaintiff's supervisors consistently rated her performance as "average"/"meets standards", "above average"/"above standard" or "exceptional". (Plaintiff's Memorandum, Exhibits 4-9.) Although the defendant attempted to document its contention that the plaintiff was frequently absent from work, the documents it submitted do not clearly show the number of or the reasons for the plaintiff's absences from work. Moreover, it appears from the appraisals that the plaintiff's job performance was satisfactory despite her absences. "Although ordinarily courts will not second guess an employer's assertion that a particular category on a performance evaluation is decisive . . . a performance evaluation that is positive overall is sufficient to withstand summary judgment at the prima facie stage of analysis." (Citation omitted.) De la Cruz v. New York City Human ResourcesAdministration Dept. of Social Services, 82 F.3d 16, 20-21 (2d Cir. 1996). The plaintiff has raised a genuine issue of material fact on the element of whether she was qualified for the dispatcher position and thus has established a prima facie case of gender and disability discrimination regarding the defendant's decision to deny her a promotion to the dispatcher position.
2. Legitimate Nondiscriminatory Reason
"Once a plaintiff establishes a prima facie case of discrimination, a presumption of discrimination is created . . . [and] the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason for the plaintiff's rejection." (Citation omitted; internal quotation marks omitted.)Ann Howard's Apricots Restaurant v. Commission on Human Rights Opportunities, 237 Conn. 209, 225, 676 A.2d 844 (1996). Here, the defendant claims that the plaintiff's supervisors considered "reliability" or consistent attendance to be essential qualifications for the dispatcher position and that they determined that the plaintiff's "attendance problems" made her insufficiently reliable for the position. (Defendant's Memorandum, Exhibit Q, ¶¶ 16, 17; Exhibit R, ¶¶ 10, 11.) As stated by the plaintiff, the duties of the dispatcher position included supervising other employees, it could be high pressure and involved meeting time restraints. (Plaintiff's Memorandum, Exhibit 2, pp. 35-36.) Link states that Anthony Leonardi, the CT Page 1286 male employee he eventually promoted to the dispatcher position, "had previous supervisory experience, strong skills and no documented problems with reliability." (Defendant's Memorandum, Exhibit R, ¶ 12.) The evidence indicates that the plaintiff did not have supervisory experience. (Plaintiff's Memorandum, Exhibit 2, pp. 6-8, 15.) In addition, the plaintiff testified that she had migraines at work approximately twice a week, that when she had a migraine she would "go blind" and was not able to function normally, at least for several minutes, and that if her vision did not clear, she would have to go home. (Id., pp. 23-25.) Although she contends that her favorable performance appraisals and the defendant's failure to document Leonardi's qualifications raise genuine issues of material fact as to the defendant's reason for not promoting her, "the McDonnell Douglas-Burdine
model does not shift the burden of persuasion to the defendant. Therefore, [t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." (Internal quotation marks omitted.) Ann Howard's ApricotsRestaurant v. Commission on Human Rights Opportunities, supra,237 Conn. 226. The defendant met its burden of articulating a legitimate, nondiscriminatory reason for its promotion decision.
3. Pretext
Once the defendant offers a legitimate, nondiscriminatory reason for its conduct, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (Internal quotation marks omitted.) Wroblewski v. Lexington Gardens, Inc., supra, 188 Conn. 61. "[T]o defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the [unlawful basis] was the real reason for the discharge." (Emphasis in original; internal quotation marks omitted.) Chertkova v. Connecticut General LifeIns. Co., 92 K.3d 81, 92 (2d Cir. 1996).[7]
Here, the plaintiff attempts to raise a question of fact as to whether the defendant's decision not to promote her was really based on her absenteeism. However, even assuming that the plaintiff could establish that the defendant used the plaintiff's CT Page 1287 absenteeism as a pretext for its real reason for denying her the dispatcher position, "this is far from the end of the matter, for to survive summary judgment [the plaintiff] had to show not only pretext, but also either use of a pretext that itself implies adiscriminatory stereotype,[8] or use of a pretext to hide[unlawful] discrimination." (Emphasis in original.) Hollander v.American Cyanamid Co., 172 F.3d 192, 200 (2d Cir. 1999). As explained by the second circuit court, "discrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility. . . . In short, the fact that the proffered reason was false does not necessarily mean that the true motive was the illegal one argued by the plaintiff." Fisher v. Vassar College, 114 F.3d 1332,1337-38 (2d Cir. 1997), cert. denied, 522 U.S. 1075,118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Accordingly, "a plaintiff does not necessarily satisfy the ultimate burden of showing intentional discrimination by showing pretext alone. A finding of pretext may advance the plaintiff's case, but a plaintiff cannot prevail without establishing intentional discrimination by a preponderance of the evidence." Id., 1339. "What this means in the summary judgment context is that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." (Emphasis in original.) Gallo v. Prudential Residential Services, Ltd.Partnership, 22 F.3d 1219, 1225 (2d Cir. 1994). "Generally speaking, the stronger the evidence that illegal discrimination is present, the greater the likelihood that discrimination is what the employer's false statement seeks to conceal. And, conversely, the weaker the evidence of discrimination, the less reason there is to believe that the employer's false statement concealed discrimination, as opposed to the numerous other reasons for which employers so frequently give false reasons for employment decisions." Fisher v. Vassar College, supra, 114 F.3d 1346-47.
On the other hand, "[a]lthough courts must be careful not to second-guess an employer's business judgment that it makes in good faith, a plaintiff must be allowed to show that her employer's asserted reasons for discharging her were a pretext CT Page 1288 and that the real reason was her age." Gallo v. PrudentialResidential Services, Ltd. Partnership, supra, 22 F.3d 1226. In addition, in employment discrimination cases, "[a] trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue . . . Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Id., 1224.
a. Gender Discrimination
The defendant contends that the plaintiff failed to provide evidence that the reasons it gave for its promotion decision were pretextual and that the real reason was the plaintiff's gender. The defendant points out that the plaintiff failed to provide evidence of any statements by management employees demonstrating bias, or that the employee who was chosen for the dispatcher position was unqualified or a "suspect choice," nor does she "contest her absenteeism." The plaintiff counters that pretext for gender discrimination is evidenced by the defendant's failure to allow her to formally apply for the position and its failure to document the qualifications of the employee who was selected for the position. However, she does not present any evidence that the defendant prevented her from applying for the position or that the other employee was not qualified for the position.
The plaintiff attempts to support her argument that the defendant's promotion decision was based on her gender with her own observations about the defendant's past practice of promoting the senior male clerk to the dispatcher position, her contention that the defendant employed a low percentage of females in her division, her claim that, as of 1993, her rate of pay was equal to that of more recently hired male clerks, and what she characterizes as "paternalistic" comments in her performance appraisals. (Plaintiff's Memorandum, Exhibit 2, pp. 40-42.) As the defendant pointed out at oral argument, the plaintiff's allegation regarding the defendant's past practice is based solely on the plaintiff's conclusory allegations, is not based on her personal knowledge, and is not supported by admissible evidence. (Id., pp. 88-90.) It is recognized that, "[i]n discrimination cases, the only direct evidence available very often centers on what the defendant allegedly said or did. . . . Since the defendant will rarely admit to having said or done what CT Page 1289 is alleged, and since third-party witnesses are by no means always available, the issue frequently becomes one of assessing the credibility of the parties." Danzer v. Norden Systems, Inc.,151 F.3d 50, 57 (2d Cir. 1998). Furthermore, "[t]here is nothing in the rule [applicable to summary judgments] to suggest that nonmovants' affidavits alone cannot, as a matter of law, suffice to defend against a motion for summary judgment." Id. However, it is also recognized that conclusory allegations and allegations which are not based on the affiant's personal knowledge are not sufficient to demonstrate pretext or to defend against a motion for summary judgment. Id., 57 n. 5. See also Holt v.KIMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1996);Gupta v. New Britain General Hospital, 239 Conn. 574, 583,687 A.2d 111 (1996); Gordon v. Yale-New Haven Hospital, Superior Court, judicial district of New Haven at New Haven, Docket No. 365472 (May 22, 1998, Levin, J.).
As to the second and third allegations, federal courts have held that "disparate treatment plaintiff's may introduce statistics as circumstantial evidence of discrimination."Hollander v. American Cyanamid Co., supra, 172 F.3d 202. However, an "inference of discrimination solely on the basis of the raw numbers is impermissible in the absence of any attempt to account for other causes of the . . . anomaly." Id., 203; see also Smithv. Xerox Corp., ___ F.3d ___, Docket No. 98-7178 (2d Cir. 1999). Because the plaintiff does not establish a connection between the defendant's practices and her allegations regarding the percentage of female employees in the transportation division and the pay rates for male clerks, her allegations are not probative of gender discrimination.
Finally, an examination of the comments the plaintiff's supervisors made in her performance appraisals shows that the supervisors generally complimented her performance and did so in terms that were not gender-based. Her characterization of comments such as "Connie is well organized . . . and all transportation personnel can rely on her to help when needed." (Plaintiff's Memorandum, Exhibit 8); as paternalistic is based on her subjective interpretation, an interpretation that is belied by her own comments in the same document that "[m]y appraisal as always is very uplifting. I'm glad my work is appreciated by everyone I work with." (Id.) Furthermore, the plaintiff does not establish a connection between these remarks and the promotion decision. Even occasional comments, or "stray remarks," which are CT Page 1290 clearly suggestive of bias, "by themselves, and without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's motion for summary judgment." (Internal quotation marks omitted.) Dobrich v. General Dynamics Corp.,Electric Boat Division, 40 F. Sup.2d 90, 102 (D. Conn. 1999); seeWoroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994).
The plaintiff also attempts to link the reason the defendant gave for the promotion decision to her gender by asserting that some of her absenteeism was due to menstrual-related problems. (Plaintiff's Memorandum, Exhibit 2, p. 109.) However, she does not offer any evidence that the defendant was aware of these problems prior to making the promotion decision. In addition, she states that Link told her that she was not promoted because her migraines made her unreliable and she acknowledges that men also get headaches. (Id., pp. 28, 38, 91, 109.) The plaintiff failed to produce sufficient admissible evidence to demonstrate the defendant's promotion decision was a pretext for gender discrimination. The defendant is granted summary judgment on this allegation.
b. Disability Discrimination
The defendant also argues that the plaintiff fails to raise a genuine issue of material fact on the issue of whether the defendant's reason for denying her the dispatcher position was a pretext for unlawful discrimination based on her disability. The plaintiff responds that the evidence establishes issues of material fact on this issue. According to the evidence, Reynolds and Link decided that the plaintiff was not qualified for the dispatcher position because of her absenteeism. (Defendant's Memorandum, Exhibit Q, ¶¶ 16, 17; Exhibit R, ¶¶ 10, 11.) The plaintiff testified that at least a portion of the time she was absent from work, it was due to migraine headaches, and that Reynolds and Link were aware of her migraines and that her headaches were often the reasons for her absences. (Plaintiff's Memorandum, Exhibit 2, pp. 22-23, 92-94, 97.) Although Link and Reynolds claim that they did not consider the plaintiff to be physically disabled, they do not deny that they were aware that she suffered from migraines. (Defendant's Memorandum, Exhibit Q, ¶ 11; Exhibit R, ¶ 6.) Moreover, Reynolds admitted that in 1991, the plaintiff submitted a return to work authorization form from a doctor indicating that the plaintiff had "severe headaches." (Defendant's Memo, Exhibit Q, ¶ 10; Exhibit O.) In addition, the plaintiff also testified that when Link told her that he was not CT Page 1291 going to promote her to the dispatcher position, he stated that it was because "we can't rely on you with your migraine headaches." (Plaintiff's Memorandum, Exhibit 2, pp. 28, 38, 98-101.) The evidence is sufficient to raise a genuine issue of material fact on the question of whether the defendant's promotion decision was a pretext for discrimination against the plaintiff on the basis of her disability. Summary judgment is denied on this allegation.
Termination
The McDonnell Douglas-Burdine model of analysis articulated above also applies to the plaintiff's allegations that the defendant's decision to terminate her employment constituted unlawful discrimination on the basis of gender and disability. See Ann Howard's Apricots Restaurant v. Commission on HumanRights Opportunities, supra, 237 Conn. 224. Again, to establish a prima facie case of unlawful gender or disability discrimination, "[t]he plaintiff need prove only four elements by a preponderance of the evidence: (1) that he or she belongs to a protected class; (2) that he or she . . . was qualified for the position in question; (3) that despite his or her qualifications, the individual was [terminated]; and (4) that after the individual was [terminated], the position remained open." (Internal quotation marks omitted.) Id. 225. The defendant concedes that the plaintiff establishes a prima facie case of gender and disability discrimination regarding her termination. Therefore, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination.
A. Legitimate/Nondiscriminatory Reason
The defendant contends that it terminated the plaintiff's employment because she falsified her time records in violation of a company policy. Specifically, the defendant claims that one of its supervisory employee's told Reynolds that on July 12, 1994, the plaintiff came to work late. (Defendant's Memorandum, Exhibit Q, ¶ 23.)[9] Reynolds checked the computerized time records, ran an audit for the date in question and discovered that the plaintiff's records had been edited and showed that she reported to work on time. (Id., ¶¶ 24, 25.) Reynolds' audit indicated that the edit had been done by someone using the plaintiff's computer password. (Id., ¶ 25.) The defendant also provided evidence that it had a written policy that prohibits employees from "[t]ampering, altering, or falsifying time records; . . ." CT Page 1292 provides that employees who violate this policy may be subject to termination, and requires that "[i]f any correction or modifications are made to the time record, both the employee and the supervisor must verify the accuracy of the changes by initialing the time record." (Defendant's Memorandum, Exhibit Q, ¶ 16; Exhibit S.) The defendant also alleges that when Reynolds and Link confronted the plaintiff about the alteration, she did not deny that she had edited her records. (Defendant's Memorandum, Exhibit Q, ¶ 27; Exhibit R, ¶ 15.) The defendant articulated a legitimate, nondiscriminatory reason for terminating the plaintiff. However, the inquiry does not end here.[10]
B. Pretext
As stated above, once the defendant offers a legitimate, nondiscriminatory reason for its conduct, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (Internal quotation marks omitted.) Wroblewskiv. Lexington Gardens, Inc., supra, 188 Conn. 61. "[T]o defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the [unlawful basis] was the real reason for the discharge." (Emphasis in original; internal quotation marks omitted.) Chertkova v.Connecticut General Life Ins. Co., supra, 92 F.3d 92.
The defendant contends that the plaintiff failed to provide evidence that the reason it gave for terminating the plaintiff was a pretext for gender or disability discrimination. The plaintiff, in turn, argues that genuine issues of material fact are raised because the plaintiff denied that she edited her time records "to obtain payment for time I did not work," the defendant failed to investigate the matter involving the time card, and failed to prove that the plaintiff was the one who edited her time card.
The evidence indicates that the plaintiff's job included working with the defendant's time and attendance program. (Plaintiff's Memorandum, Exhibits 8, 9.) She testified that her duties included reviewing employees' time and attendance records and changing the records, if necessary, to reflect the time and CT Page 1293 dates actually worked. (Plaintiff's Memorandum, Exhibit 2, pp. 13, 15-18, 62-67, 67, 69-71.) She also stated that in the past, she changed her own records if they were inaccurate. (Id., pp. 60-64.) Although her supervisors did not specifically authorize each change she made, the plaintiff testified that she provided Link with a printout each day, which included information on employees' hours. (Id., pp. 16-17, 64.) In addition, she testified that the defendant never told her that she could not make alterations to her own time card, or that it had a policy regarding this matter. (Id., p. 69; Plaintiff's Memorandum, Exhibit 3, ¶ 13.) Furthermore, the evidence shows that although the plaintiff could not specifically recall making an alteration to her record for the date in question, she denied that she changed her records to obtain credit for time she had not actually been at work. (Plaintiff's Memorandum, Exhibit 2, pp. 63, 73-75; Exhibit 3, ¶ 12.) The plaintiff explained that other employees had access to her password and could have made the alterations at issue. (Plaintiff's Memorandum, Exhibit 2, pp. 85-87; Exhibit 3, ¶ 4.) The evidence indicates that Link's decision to terminate the plaintiff was not based on his determination that she had altered her time records, but rather on his determination that she had falsified her records; (Defendant's Memorandum, Exhibit R, ¶¶ 14-17). The evidence is sufficient to raise a genuine issue of material fact on the question of whether the reason the defendant gave for terminating the plaintiff was its real reason.
The next issue is whether the plaintiff raises sufficient evidence to show that the defendants' reason was a pretext for gender or disability discrimination. "To begin with, it is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal. . . . Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons." Dister v. Continental Group, Inc.,859 F.2d 1108, 1116 (2d Cir. 1988). "An employer is not prohibited from making an employment decision based on non-discriminatory considerations no matter how subjective or unsound." Mauro v.Southern New England Telecommunications, 46 F. Sup.2d 181, 185 (D. Conn. 1999).
a. Gender Discrimination
None of the evidence before the court, direct, circumstantial, CT Page 1294 or statistical, supports the plaintiff's allegation that the defendant's decision to terminate her employment was based on her gender. Although "[t]he plaintiff is not required to produce direct evidence of discrimination;" Norton v. Sam's Club,145 F.3d 114, 119 (2d Cir. 1998), cert. denied, ___ U.S. ___,119 S.Ct. 511, 142 L.Ed.2d 424 (1998); "a jury cannot infer discrimination from thin air." Id. The circumstances of the plaintiff's termination are similar to those presented in an age discrimination case in which the employer claimed that it fired the plaintiff for falsifying his time card by marking a thirty minute lunch break on his card when he actually took a one hour break. Id., 116, 119. The plaintiff's claim of pretext was based solely on his allegation that the employer's reason was "preposterous." In reversing the plaintiff's jury verdict, the court explained that although "it is easy to see how a reasonable person could conclude from the facts of this case that it waswrong for [the employer] to fire [the plaintiff]; (emphasis in original) Id., 119; "the [Age Discrimination in Employment Act] does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age." (Emphasis in original.) Id., 120. In the absence of any evidence of gender discrimination, the defendant is granted summary judgment on the plaintiff's allegation that the defendant discriminated against her on the basis of her gender in terminating her employment.
b. Disability Discrimination
Except for the evidence found sufficient to raise genuine issues of material fact that the defendant's promotion decision was based on the plaintiff's alleged disability, the record before the court does not contain any evidence linking the defendant's decision to terminate the plaintiff to her migraines. Given that the defendant's decision to terminate the plaintiff's employment was made five months after its promotion decision and that both decisions were made by the same person. This evidence is also sufficient to raise a genuine issue of material fact that the defendant's termination decision was based on her disability. Summary judgment is denied on this allegation.
Retaliation
The plaintiff also claims that the defendant's decision to terminate her employment constituted discriminatory retaliation. Although the defendant asserts that it is entitled to summary CT Page 1295 judgment on all of the plaintiff's allegations, the defendant does not specifically address the plaintiff's retaliation allegation in its motion or its supporting memorandum. "[A] court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof." (Internal quotation marks omitted.) Miller v. Bourgoin, 28 Conn. App. 491,500, 613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 825
(1992). Therefore, summary judgment is denied on the plaintiff's allegation of discriminatory retaliation.
In accordance with the foregoing it is hereby ORDERED:
1. The defendant is denied summary judgment as to its procedural argument that the plaintiff's failure to promote claim is time barred and that the court is without jurisdiction.
2. The defendant is denied summary judgment as to the plaintiff's claim that the defendant's promotion decision was a pretext for disability discrimination.
3. The defendant is denied summary judgment as to the plaintiff's claim that the defendant's termination decision was a pretext for disability discrimination.
4. The defendant is denied summary judgment as to the plaintiff's claim that her termination constituted discriminatory retaliation.
5. The defendant is granted summary judgment as to the plaintiff's claim that the promotion decision was a pretext for gender discrimination.
6. The defendant is granted summary judgment as to the plaintiff's claim that the defendant's termination decision was a pretext for gender discrimination.
Joseph A. Licari, Jr. Judge of the Superior Court